## CHARLOTTE L. KELMAN *v.* DAVID A. KELMAN
### (AC 24822)

Lavery, C. J., and Schaller and Dranginis, Js.

Submitted on briefs September 16—officially released November 23, 2004

*Kenneth J. Bartschi* and *Wesley W. Horton* filed a brief for the appellant (defendant).

*Edith F. McClure* filed a brief for the appellee (plaintiff).

### Opinion

DRANGINIS, J. The defendant, David A. Kelman, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Charlotte L. Kelman. On appeal, the defendant claims that the court (1) improperly relied on the parties' gross incomes rather than on their net incomes in fashioning its financial orders and (2) exceeded its authority pursuant to General Statutes § 46b-56c in fashioning its educational support orders. We disagree with the defendant's first claim and agree with his second claim.

The following facts and procedural history are relevant to our resolution of this appeal. The parties were married on June 23, 1991. Two children were born of the marriage. On July 31, 2001, the plaintiff initiated the underlying proceeding seeking the dissolution of the parties' marriage on the ground of irretrievable breakdown. The parties' marriage was dissolved on October 27, 2003. The court, as part of the dissolution decree, ordered the defendant to pay the plaintiff $250[1] per week for child support and to pay for the postsec-

---

[1] Although the award was $10 less than that computed on the child support guideline worksheet, it was not a deviation therefrom.

ondary education of the parties' children to the extent that the parties' education account was insufficient to pay for the children's bachelor's degrees. This appeal followed.

I

The defendant first claims that the court improperly relied on the parties' gross incomes rather than on their net incomes in fashioning its financial orders. We disagree.

"We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citation omitted; internal quotation marks omitted.) *Greco* v. *Greco*, 82 Conn. App. 768, 772–73, 847 A.2d 1017, cert. granted on other grounds, 270 Conn. 907, 853 A.2d 524 (2004). Mindful of those principles, we now turn to the issue of whether the court incorrectly applied the law by basing its financial orders on the parties' gross incomes.

"It is well settled that a court must base child support and alimony orders on the available net income of the parties, not gross income." *Morris* v. *Morris*, 262 Conn. 299, 306, 811 A.2d 1283 (2003). In support of his claim, the defendant relies primarily on *Morris* v. *Morris*, supra, 299, and *Ludgin* v. *McGowan*, 64 Conn. App. 355, 780 A.2d 198 (2001). The defendant's reliance on these cases, however, is misplaced.

In *Morris* v. *Morris*, supra, 262 Conn. 299, our Supreme Court reversed the judgment of the trial court because the court relied on the parties' gross incomes in modifying the defendant's child support obligation.

Id., 305. In reversing the judgment, the court relied on the trial court's statement that it was "expressly and affirmatively" relying on the parties' gross incomes. Id., 307.

Similarly, in *Ludgin* v. *McGowan,* supra, 64 Conn. App. 355, this court reversed the judgment of the trial court because the court fashioned its financial orders based on the parties' gross incomes. In reversing the court's decision, we stated: "[T]he court repeatedly referred to and compared the parties' gross incomes. . . . [A]lthough the court had before it evidence of the parties' net incomes, it appears that the court chose not to rely on such information. The court's memorandum of decision is devoid of any mention of the parties' net incomes." (Internal quotation marks omitted.) Id., 358–59.

While *Morris* and *Ludgin* were cases in which the trial court's memorandum of decision was based solely on the parties' gross incomes as opposed to their net incomes, in this case, the court's memorandum of decision specifically stated that it was relying on "all of the relevant information," including the parties' financial affidavits and their child support guideline worksheets, both of which included the parties' net incomes, as well as the testimony of the parties. The court also stated that it had considered "all of the factors in General Statutes §§ 46b-81, 46b-82 and 46b-62 and other pertinent statutes, earning and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial orders . . . ."

Although the court referenced the parties' gross incomes in its memorandum of decision, it never stated, unlike in *Morris* and *Ludgin,* that it was relying solely on their gross incomes in fashioning its financial orders. On the contrary, the court specifically stated that it took into account the relevant statutes, the parties' testi-

mony, the financial affidavits and the child support guideline worksheets, which included the parties' net incomes. Therefore, we cannot conclude that the court abused its discretion in fashioning its financial orders.

II

The defendant next claims that the court exceeded its authority pursuant to § 46b-56c in fashioning its educational support orders. We agree.

Because the defendant's claim requires us to interpret § 46b-56c, our review is plenary. *Falkenstein* v. *Falkenstein*, 84 Conn. App. 495, 501, 854 A.2d 749, cert. denied, 271 Conn. 928, 859 A.2d 581 (2004). "When construing a statute, we first look to its text, as directed by Public Acts 2003, No. 03-154, § 1 (P.A. 03-154). Public Act 03-154, § 1, provides: The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 796–97, 855 A.2d 174 (2004).

The text of § 46b-56c is clear and unambiguous. Section 46b-56c provides in relevant part: "(a) For purposes of this section, an educational support order is an order entered by a court requiring a parent to provide support for a child or children to attend *for up to a total of four full academic years* an institution of higher education or a private occupational school for the purpose of attaining a bachelor's or other undergraduate degree, or other appropriate vocational instruction. An educational support order may be entered with respect to any child who has not attained twenty-three years of

age *and shall terminate not later than the date on which the child attains twenty-three years of age.*

\* \* \*

"(f) The educational support order may include support for any necessary educational expense, including room, board, dues, tuition, fees, registration and application costs, *but such expenses shall not be more than the amount charged by The University of Connecticut for a full-time in-state student at the time the child for whom educational support is being ordered matriculates,* except this limit may be exceeded by agreement of the parents. An educational support order may also include the cost of books and medical insurance for such child." (Emphasis added.)

In its financial orders relating to the education of the parties' children, the court stated: "The plaintiff shall have sole custodial control of the current accounts currently held for the benefit of the children. She shall seek professional advice as to the investing of the accounts consistent with the preservation of the principal. Said accounts shall be used solely for the post-secondary education of the children. To the extent such funds are not sufficient to enable the children to achieve a bachelor's degree, the defendant shall pay for such costs which shall include tuition, room and board either on or off campus, books, incidental expenses and transportation to and from the educational institution and the parents' residence . . . ."

The court's order runs afoul of § 46b-56c in several respects. The order is not limited to when the parties' children reach the age of twenty-three. The order fails to limit the defendant's obligations to a total of four full academic years. The order does not specify that the defendant's obligations shall not be more than the amount charged by the University of Connecticut for a full-time in-state student. Finally, the order requires

the defendant to pay for the children's incidental expenses and for their transportation to and from the school and the parents' residence, neither of which is mentioned in § 46b-56c. The educational support order was therefore improper.

The judgment is reversed only as to the educational support order and the case is remanded with direction to render judgment limiting that order in accordance with § 46b-56c. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.