## DANIEL HUGHES v. PAMELA HUGHES
(AC 25767)

Bishop, Harper and Mihalakos, Js.

Argued November 14, 2005—officially released May 2, 2006

*Gaetano Ferro*, with whom were *Brigid A. Connolly* and, on the brief, *Livia D. Barndollar*, for the appellant (plaintiff).

*Gary I. Cohen*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Daniel Hughes, appeals from the judgment of the trial court dissolving his marriage to the defendant, Pamela Hughes. On appeal, the plaintiff claims that the court improperly (1) relied on his gross

income rather than his net income in fashioning the unallocated child support and alimony order, (2) ordered postmajority child support in violation of General Statutes § 46b-84, (3) awarded lifetime alimony, (4) awarded the defendant 50 percent of the plaintiff's stock options and restricted stock, and (5) considered the plaintiff's bonus that was paid in early 2004 as both a source of income and as an asset. The plaintiff also claims that the totality of the court's orders constituted an abuse of discretion. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. The parties were married on September 10, 1994. They are the parents of three children, all minors. Claiming an irretievable breakdown in the marital relationship, the plaintiff brought this dissolution action by a complaint dated August 9, 2001. He sought dissolution of the marriage, joint custody of the minor children and a division of the marital assets. The defendant admitted the allegations in the plaintiff's complaint and filed a cross complaint in which she sought dissolution of the marriage, sole custody of the minor children, child support, alimony and a division of the marital assets.

By memorandum of decision filed June 18, 2004, the court dissolved the parties' marriage and issued financial orders.[1] The plaintiff timely filed a motion to reargue, which was denied on July 28, 2004. This appeal followed.

As a preliminary matter, we set forth our standard of review. "An appellate court will not disturb a trial court's orders [financial or otherwise] in domestic rela-

---

[1] To their credit, the parties stipulated to a parenting plan that was adopted by the court and incorporated into the decree of dissolution. The parties stipulated that they would share joint legal custody of the minor children, who would reside primarily with the defendant.

tions cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . We apply that standard of review because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Citation omitted; internal quotation marks omitted.) *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 132, 869 A.2d 164 (2005). Mindful of these principles, we turn to the issues at hand.

## I

The plaintiff's first three claims relate to the court's order of unallocated alimony and child support. The court ordered, inter alia: "The plaintiff shall pay unallocated periodic alimony and child support of 40 percent of the first $400,000 of his cash earnings in each year, 30 percent of the next $300,000 of cash earnings and 10 percent of the next $150,000 of cash earnings. Such earnings shall not include other forms of compensation such as stock options, restricted stock, [deferred profit sharing and employee stock ownership plans], capital accumulation plan or any other incentive awards. Payments shall be made monthly utilizing his base salary and the most recent cash bonuses paid for the prior year. Payments shall be made until the death of either party, the defendant's remarriage or her cohabitation as defined by [General Statutes § 46b-86 (b)] and case law. This order is modifiable as to amount and is indefinite as to term subject to the limitations aforesaid. A wage withholding is entered." We address the plaintiff's three claims regarding this order in turn.

A

The plaintiff first claims that the court improperly relied on his gross income rather than on his net income in fashioning the unallocated alimony and child support order. Specifically, the plaintiff claims that because the court referred only to gross income and did not mention net income in its memorandum of decision, its order was based solely on gross income and was therefore improper. We disagree.

The parties acknowledge that the principle of law governing this issue is clear. It is well settled that a court must base its child support and alimony orders on the available net income of the parties, not gross income. *Collette* v. *Collette*, 177 Conn. 465, 469, 418 A.2d 891 (1979). Whether or not an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific.

In *Morris* v. *Morris*, 262 Conn. 299, 811 A.2d 1283 (2003), our Supreme Court reversed the judgment of the trial court because, in that instance, the court *expressly* relied on the parties' gross incomes in modifying the defendant's child support obligation. The *Morris* court concluded: "Although the court broadly stated that its support order was based on financial affidavits, the court, nonetheless, expressly and affirmatively stated that the defendant has the following *gross* amounts which are properly included in his support income consideration . . . ." (Emphasis added; internal quotation marks omitted.) Id., 307.

In *Ludgin* v. *McGowan*, 64 Conn. App. 355, 358–59, 780 A.2d 198 (2001), this court reversed the judgment of the trial court because the court based its financial orders on the parties' gross incomes. There, we stated:

"[T]he court repeatedly referred to and compared the parties' gross incomes. . . . Although the court had before it evidence of the parties' net incomes, it appears that the court chose not to rely on such information. The court's memorandum of decision is devoid of any mention of the parties' net incomes." (Internal quotation marks omitted.) Id.

In *Greco* v. *Greco*, 82 Conn. App. 768, 773, 847 A.2d 1017 (2004), aff'd, 275 Conn. 348, 880 A.2d 872 (2005), this court reversed the trial court's alimony order, which was based on gross income, even though the trial court did not affirmatively and expressly state that it had relied on the parties' gross incomes. In *Greco*, however, it was clear that the court relied solely on gross income because the financial orders far exceeded the obligor's available net income. Thus, the orders logically could only have been based on gross income.

In *Kelman* v. *Kelman*, 86 Conn. App. 120, 123, 860 A.2d 292 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1079 (2005), although the trial court made reference to the parties' gross incomes in its decision, it did not expressly state that it was relying solely on gross earnings in framing its order. In affirming the trial court's decision, this court stated: "[T]he court specifically stated that it took into account the relevant statutes, the parties' testimony, the financial affidavits and the child support guideline worksheets, which included the parties' net incomes." Id., 123–24.

Although the records in *Morris*, *Ludgin* and *Greco* supported the conclusions in those cases that the trial court's financial orders were based solely on the parties' gross incomes and not their net incomes, the record in this case does not compel such a conclusion. The case at hand is more analogous to *Kelman*. Although, in *Kelman*, the court's memorandum of decision referenced the parties' gross incomes, it did not state that

it was relying *solely* on their gross incomes in fashioning its orders. Id., 123. As in *Kelman*, the mere notation by the court of a party's gross earnings is not fatal to its support and alimony orders so long as its orders are not based on the parties' gross earnings.

In this case, the court noted the plaintiff's gross earnings to demonstrate their scope and variability in order to explain its reasoning for fashioning an order framed as a percentage of the plaintiff's gross earnings. The court stated: "The court lists the gross earnings of the plaintiff to illustrate the capability and ability he has displayed and the pay he has received for his efforts. Since his earned income fluctuates from year to year, the court will provide for a formula for the periodic alimony and child support. Each party has submitted a proposal in this respect in their proposed orders." Indeed, the plaintiff's proposed orders, filed on April 21, 2004, suggest an unallocated alimony and child support order on the basis of his gross annual cash compensation from employment.[2] The court further noted the gross and net values of the plaintiff's most recent cash bonus. Throughout its decision, the court made frequent reference to the parties' financial affidavits. The court

---

[2] The plaintiff's proposed orders provide, inter alia: "The Husband shall pay unallocated alimony and child support of 30 [percent] of his gross annual cash compensation from employment up to $1,000,000.00. The Husband's payment for unallocated alimony and child support shall be based in each year upon his gross earned cash compensation received for his prior year's performance, i.e., for calendar year 2004, he shall pay 30 percent of his base salary of $150,000. . . . 'Gross annual cash compensation from employment' shall only include base salary and cash bonuses received in any calendar year, but shall not include all forms of noncash compensation, such as stock options, restricted stock, [deferred profit sharing and employee stock ownership plans], Capital Accumulation Plan and other such incentive awards."

The defendant's proposed orders also suggest an unallocated support order based on the plaintiff's cash earnings. The stipulated pendente lite order for unallocated alimony and child support was also based on the plaintiff's base salary plus his cash bonus.

also considered the tax returns, which disclosed not only the plaintiff's gross income, but also his total tax liability and, thus, his net disposable income. The court had before it ample evidence from which it could determine the plaintiff's net income and the respective financial needs and abilities of each party.

It is noteworthy, too, that the court also expressly considered the parties' proposed orders in which both parties proposed that the alimony and child support order should be unallocated and should be a function of the plaintiff's gross income. Although the court listed the plaintiff's gross earnings, taken from his tax returns for the years 1997 through 2003, unlike in *Morris*, the court here did not state that it *relied* on the plaintiff's gross earnings to form the basis of the order. Rather, the court merely referred to the plaintiff's gross income to demonstrate his ability to pay support. Finally, the fact that the alimony and support order was ultimately a function of gross income does not, alone, stand for the proposition that the order was based on gross income. Here, we differentiate between an order that is a function of gross income and one that is based on gross income. In this regard, we note that we have found no case in which an order for support or alimony has been reversed on review simply because it was expressed as a function of a party's gross income. We believe that the term "based" as used in this context connotes an order that only takes into consideration the parties' gross income and not the parties' net income. Consequently, an order that takes cognizance of the parties' disposable incomes may be proper even if it is expressed as a function of the parties' gross earnings.

We note that, unlike in *Kelman*, the court in this case did not specifically reference the criteria used in making its decision. Our Supreme Court has repeatedly held, however, that the trial court is not required to make specific reference to the criteria that it considered in

making its decision. See, e.g., *Dombrowski* v. *Noyes-Dombrowski*, supra, 273 Conn. 137. Although we recognize that an order need not affirmatively or expressly state that the court is relying solely on gross income for that order to be improper, we are similarly of the opinion that a trial court need not expressly state that it has considered the appropriate factors in reaching its decision. According the court every reasonable presumption in favor of the correctness of its decision, we assume that the court considered the appropriate statutory and evidentiary underpinnings in fashioning its financial orders. See *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 203, 572 A.2d 1032 (1990). Although the court did not expressly state that it considered the plaintiff's net income in determining the financial orders, we infer that the court considered the relevant statutory factors and all of the evidence submitted by the parties. Therefore, we cannot conclude that the court abused its discretion in fashioning the support order.

B

The plaintiff next claims that the support order, by its terms, provides for child support beyond the age of majority and is thus beyond the jurisdiction of the court. Specifically, the plaintiff claims that the order must contain a step-down to coincide with each child reaching the age of majority. We disagree.

As a general matter, "[t]he obligation of a parent to support a child terminates when the child attains the age of majority, which, in this state, is eighteen. General Statutes § 1-1d; *Kennedy* v. *Kennedy*, 177 Conn. 47, 52, 411 A.2d 25 (1979).[3] The statutory grant of jurisdiction

---

[3] Additional statutory provisions may apply, however, to modify this general rule. Pursuant to General Statutes § 46b-66 (a), a court in a dissolution proceeding may enter an order providing for postmajority child support when the parties have agreed in writing to the terms of that order. General Statutes § 46b-84 allows for postmajority support for children who are still in high school, and General Statutes § 46b-56c authorizes the court, at the time of the marital dissolution, to frame postmajority education orders.

to the Superior Court in matters relating to child support incident to the dissolution of a marriage[4] likewise expressly circumscribes the court's jurisdiction to orders involving only 'minor children.' " *Cariseo* v. *Cariseo*, 190 Conn. 141, 142–43, 459 A.2d 523 (1983).

The plaintiff claims that because the order provides for no reduction as each child reaches the age of majority, a portion of the support order will necessarily be attributable to the support of a child who has surpassed the age of majority. The plaintiff fails to acknowledge, however, the fact that he may move to modify the combined alimony and support order at any time, including the date on which each child reaches the age of majority.[5] This court has held that "[w]hen, as part of a divorce decree, a parent is ordered to pay a specified amount periodically for the benefit of more than one child, the emancipation of one child does not automatically affect the liability of the parent for the full amount. . . . The proper remedy . . . is to seek a modification of the decree." (Citation omitted; internal quotation marks omitted.) *Gillespie* v. *Gillespie*, 8 Conn. App. 382, 386, 512 A.2d 238 (1986). Thus, although the attainment of majority by each child may not automatically entitle the plaintiff to a reduction in his alimony and support obligation, it provides a basis for the plaintiff to seek a modification. Because the order as framed by the court does not, by its own terms, require a payment of combined alimony and support beyond the dates on which the children reach the age of majority, and because the order is subject to modification as each

---

[4] See General Statutes § 46b-84.

[5] "General Statutes § 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. . . . A final order for [alimony or] child support may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Internal quotation marks omitted.) *Arena* v. *Arena*, 92 Conn. App. 463, 467, 885 A.2d 765 (2005).

child reaches the age of majority, it is does not violate the proscription against orders for the payment of support beyond the permissible age.

Accordingly, we hold that the court's alimony and support order, which can be modified at any time by the court, does not, by its terms, require the plaintiff to pay postmajority child support. Therefore, it does not constitute an abuse of discretion by the court.

C

The plaintiff also claims that the court improperly awarded lifetime alimony. Specifically, the plaintiff claims that because the parties were married for less than ten years and they were both thirty-eight years old and in good health at the time of dissolution, the court abused its discretion in awarding alimony of indefinite duration. The record belies the plaintiff's claim.

General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

"General Statutes § 46b-82 describes circumstances under which a court may award alimony. The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 669–70, 862

A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005).

In this case, the court found that the plaintiff's behavior, specifically his extramarital relationship, was the primary cause for the breakdown of the marriage. The court found that although both parties were in good health, the defendant has had no career other than as a homemaker, and that the plaintiff's occupation, vocational skills and employability afforded him greater prospects for income than were available to the defendant. The court also undertook a thorough examination of the assets of the parties. It is clear that the court was mindful of its obligation to consider the statutory factors in determining alimony. Given the court's finding, which was amply supported by the record, that the defendant had not been employed outside the home, had no prospects for employment and had no skills for employability, and the court's apparent consideration of the statutory factors, we cannot conclude that the court abused its discretion in issuing an alimony order of unlimited duration.

## II

The plaintiff next claims that the court improperly awarded the defendant 50 percent of all of the plaintiff's stock options and restricted stock units.[6] Specifically, the plaintiff claims that the court should have distinguished between those awards he received for services performed during the marriage, those he received for employment services after the parties' separation and those he received in contemplation of future services. In making this claim, the plaintiff acknowledges, as he must, that the court has a broad latitude of discretion in formulating its orders regarding the distribution of

[6] The court ordered, inter alia: "[T]he defendant is awarded 50 percent of the Merrill Lynch stock options, the Morgan Stanley stock options and the Morgan Stanley stock units, and is made the equitable owner of the same."

assets, including those that relate to employment. See *Bornemann* v. *Bornemann*, 245 Conn. 508, 752 A.2d 978 (1998). To the extent that the plaintiff claims that the court did not fully explain its rationale for its orders, it is not the function of this court on review to engage in speculation. We note that neither party sought an articulation from the court regarding this portion of its orders. "Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . ." (Internal quotation marks omitted.) *Calo-Turner* v. *Turner*, 83 Conn. App. 53, 56, 847 A.2d 1085 (2004). Because the orders, as issued, are within the court's discretion, this claim fails.

### III

The plaintiff next claims that the court improperly considered his bonus that was paid in early 2004 both as a source of income and as an asset to be distributed. This claim lacks merit.

As noted, the court ordered child support and alimony to be based on the plaintiff's cash earnings, including his cash bonuses. The court further ordered: "The plaintiff is awarded and shall retain his Chase Bank account listed as containing $326,979 . . . ." In January, 2004, the plaintiff received a bonus for his prior year's employment in the amount of $766,250 gross, and $456,992.78 net, which he claims he deposited into his Chase Bank account. The plaintiff claims that the court improperly based the support order on the bonus and awarded the bonus to the plaintiff as part of the division of assets. Merely because the plaintiff claims to have deposited the bonus into an account awarded to him as part of the property distribution does not indicate

that the court considered the bonus as both a source of income and an asset to be distributed.[7]

## IV

The plaintiff finally claims that the totality of the court's financial orders constituted an abuse of discretion. We disagree.

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, supra, 86 Conn. App. 668.

The judgment is affirmed.

In this opinion HARPER, J., concurred.

MIHALAKOS, J., dissenting. I respectfully dissent from the majority's conclusion that the trial court acted properly in fashioning its financial order. I believe that the court based the alimony and child support obligation of the plaintiff, Daniel Hughes, on gross income, which constituted an abuse of its discretion.

"Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Internal quotation marks omitted.) *Morris* v.

---

[7] The plaintiff testified that he opened the Chase Bank account in September, 2001. After opening the account, he had one half of his paycheck deposited directly into the account. There is no evidence of the amount in the account prior to the deposit of the bonus.

*Morris*, 262 Conn. 299, 305, 811 A.2d 1283 (2003). Our law is clear that "a court must base child support and alimony orders on the available net income of the parties, *not gross income*." (Emphasis added; internal quotation marks omitted.) Id., 306; see also *Collette* v. *Collette*, 177 Conn. 465, 469, 418 A.2d 891 (1979); *Tobey* v. *Tobey*, 165 Conn. 742, 747, 345 A.2d 21 (1974); *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 202, 572 A.2d 1032 (1990). Stated another way, "[*g*]*ross earnings is not a criterion for awards of alimony*." (Emphasis added; internal quotation marks omitted.) *Ludgin* v. *McGowan*, 64 Conn. App. 355, 358, 780 A.2d 198 (2001).

In *Ludgin* v. *McGowan*, supra, 64 Conn. App. 355, this court held that a trial court's repeated reference in its memorandum of decision to the parties' gross incomes, along with the failure to discuss the issue of net income, violated our well established precedent requiring that financial orders be based on net income, not gross income. Id., 358. As I will discuss in greater detail, it is my belief that the reasoning in *Ludgin* dictates a reversal of the court's financial order in this case. I believe that the majority's decision to discount our holding in *Ludgin* misinterprets our case law and will lead to confusion and instability in an area of law that is in need of clear and consistent guidelines.

*Ludgin* involved a dissolution action in which the parties sought alimony and child support orders from the court. Id., 356. Prior to the hearing, the parties had furnished the court with evidence of both their gross and net incomes. Id., 357, 358 n.2. In its memorandum of decision setting forth the financial orders, the court repeatedly referred to and compared the parties' gross incomes.[1] Id., 358. The plaintiff appealed to this court,

---

[1] For example, the court stated in its memorandum of decision that "[t]he plaintiff's financial affidavit is not reflective of a regular weekly salary, but rather a computation of . . . gross income. The plaintiff testified that his . . . gross income for the year 1996 was $64,132 . . . for the year 1997 [it was] $65,455 . . . ." (Internal quotation marks omitted.) *Ludgin* v. *McGo-*

claiming that the trial court improperly had based its financial orders on the parties' gross incomes. Id., 356. This court, having reviewed the foregoing facts, concluded: "Although the court had before it evidence of the parties' net incomes, it appears that the court chose not to rely on such information. The court's memorandum of decision is devoid of any mention of the parties' net incomes. The court relied solely on the parties' gross incomes in fashioning the financial orders. We conclude, therefore, that the court improperly designed its financial orders by relying on the parties' gross incomes rather than on their net incomes." Id., 358–59. The factual circumstances of the present case are comparable to those in *Ludgin* and, therefore, support a similar outcome.

As in *Ludgin,* the court in the present case, despite having before it evidence of net income, focused entirely on gross income throughout its memorandum of decision. The most compelling evidence that the court based its order on gross income is the terms of the financial order, which were expressed as a percentage of the plaintiff's gross income.[2] I agree with the majority that a alimony and child support order expressed as a function of gross income *could*, in theory, still be based on net income. Nevertheless, that the court chose to express its order as a percentage of the plaintiff's gross income is significant and warrants closer scrutiny into the court's reasoning for basing the order on the gross, rather than the net, figures.

Here, however, it is not only the terms of the order but the totality of the court's reasoning throughout its memorandum of decision that leads me to conclude

*wan,* supra, 64 Conn. App. 358. The court then listed the plaintiff's gross income for 1998, calculated his gross weekly income for that year and compared that number to the defendant's gross weekly income. Id.

[2] See the terms of the court's financial order set forth in part I of the majority opinion.

that the award was based on gross income. Notably, the court's memorandum of decision also listed the plaintiff's gross earnings for the previous seven years. Specifically, the court stated: "The court lists the gross earnings of the plaintiff to illustrate the capability and ability he has displayed and the pay he has received for his efforts. Because his earned income fluctuates from year to year, the court will provide for a formula for the periodic alimony and child support. Each party has submitted a proposal in this respect in their proposed orders. The plaintiff's W-2 earnings for the previous seven years are as follows . . . [1997: $279,080; 1998: $373,073; 1999: $720,152; 2000: $368,937; 2001: $791,008; 2002: $564,038; 2003: $542,156]." A comparison of the foregoing statement to the statements made by the court in *Ludgin*; see footnote 1 of this opinion; indicates that the courts' references to gross income in both cases are strikingly similar.

The majority reasons that the court made repeated reference to the plaintiff's gross income solely to demonstrate his ability to pay alimony and child support. I disagree. The better explanation, rather, for why the court focused on gross income is because the proposed orders submitted by both parties requested that the award be based on gross income. As the majority notes, the court expressly references the parties' proposed orders in its memorandum of decision. See footnote 2 of the majority opinion. That the parties requested that the order be based on gross income and that the court responded with an award expressed as a function of gross income strongly indicates that the court based its award on gross income. Regardless of whether the parties requested such a result in their proposed orders, however, the court cannot circumvent our well established precedent requiring that financial orders be based on net income. See *Morris* v. *Morris*, supra, 262 Conn. 306.

Further, nowhere in its memorandum of decision did the court indicate that it relied on net income as a basis for the order.[3] The majority correctly points out that, generally speaking, a court is not required to make an explicit finding regarding net income in its memorandum of decision. See *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 137, 869 A.2d 164 (2005). In relying on this principle to affirm the court's order, however, the majority presumes too much. The majority refers to the trial court's references to the plaintiff's financial affidavit, his tax returns and the net value of his most recent cash bonus, and concludes that the court had ample evidence from which it could determine the parties' net incomes. Simply because the court had before it evidence of net income, however, does not necessarily mean that the court relied on net income. See *Ludgin* v. *McGowan*, supra, 64 Conn. App. 358.[4] What we are presented with in this case is not a situation in which the court merely failed to detail its reasoning with regard to the net income of the parties. In this case, not only is any meaningful mention of net income absent from the memorandum of decision,[5] but also in its place is a detailed analysis of *gross* income. In my opinion, given the court's emphasis on gross income, the court would have had to make it clear that it had *not* based its decision on gross income. Without any such indication, I cannot see how the court's order can be sustained.

---

[3] The court mentioned net earnings only once, stating: "The plaintiff received one-time awards intended to offset awards forfeited by leaving Merrill Lynch. His cash bonus paid this year for 2003 was $766,250 gross and $456,992.78 net as listed on his financial affidavit dated and filed April 20, 2004." In my opinion, this single, casual reference to net earnings, which was made early on in the court's memorandum of decision during the court's background discussion, is insignificant to our analysis.

[4] See also *Morris* v. *Morris*, supra, 262 Conn. 303 n.3, in which our Supreme Court concluded that a financial order was based improperly on gross income despite its awareness that the trial court had before it evidence of net income *and* that the court even had stated in its memorandum of decision that it relied on the parties' financial affidavits as the basis for its order.

[5] See footnote 3 of this opinion.

The majority's attempt to distinguish *Ludgin* from other relevant case law is not persuasive. *Morris* v. *Morris*, supra, 262 Conn. 299, is the most recent Supreme Court case on point and the only Supreme Court case decided after our holding in *Ludgin*. In *Morris*, our Supreme Court concluded that the trial court had abused its discretion in fashioning a support order because in its memorandum of decision, it "affirmatively and expressly stated that it relied on gross incomes in determining support . . . ."[6] Id., 307. The court's holding reinforces our well established case law dictating that financial orders be based on net income, not gross income. Yet, as the majority concedes, *Morris* cannot be read so narrowly as to invalidate orders only when a court states in *explicit* terms that it relied on gross income. In fact, the majority can cite nothing about *Morris* that alters the controlling weight of *Ludgin*. Because the facts of the present case more closely resemble the facts of *Ludgin* than the facts of *Morris*, *Ludgin* is more helpful than *Morris* in the analysis.

In further support of its decision to sustain the order, the majority relies on *Kelman* v. *Kelman*, 86 Conn. App. 120, 860 A.2d 292 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1079 (2005). In *Kelman*, we determined that a trial court, despite having referenced the parties' gross incomes in its memorandum of decision, did not abuse its discretion in fashioning its financial orders. Id., 124. There is a critical distinction between *Kelman* and the present case, however. In *Kelman*, the court *expressly stated* that it had based its orders on all of the relevant information, including the parties' financial affidavits and child support guideline worksheets, both of which included the parties' net incomes. Id., 123. The presence

---

[6] Specifically, the trial court in *Morris* stated: "[T]he defendant has the following *gross* amounts which are properly included in his support income consideration . . . ." (Emphasis in original; internal quotation marks omitted.) *Morris* v. *Morris*, supra, 262 Conn. 307.

of this language in the memorandum of decision is what saved the financial orders. In the present case, that language, or anything equivalent, is wholly absent from the court's memorandum of decision. The court in the present case never stated that it had relied on net income, nor did it make a more general statement indicating that it had relied on documents containing information of the parties' net incomes. Because the court in *Kelman* provided the reviewing court with some evidence that it had based its order on the proper criteria,[7] *Kelman* cannot be used to support the majority's decision to affirm the decision in this case, in which no such evidence was provided.

The law is clear and simple: financial orders may not be based on gross income. When all evidence indicates that an award has been based on gross income, a trial court cannot be entitled to a presumption otherwise. I respectfully dissent from part I of the majority's opinion and, consequently, would not reach the other claims presented on appeal. I would reverse the judgment as to the financial orders and remand the case for a new hearing in accordance with law.

---

[7] Furthermore, the court in the present case emphasized the parties' gross earnings to a far greater extent than did the court in *Kelman*, which made only a passing reference to gross earnings. See *Kelman* v. *Kelman*, supra, 86 Conn. App. 123–24.