MARK C. LANGLEY *v.* OXANA V. LANGLEY
(AC 32664)

Bear, Espinosa and Sullivan, Js.

Argued April 19—officially released August 21, 2012

*Daniel H. Miller*, for the appellant (plaintiff).

*Elisa J. Pensavalle*, for the appellee (defendant).

## Opinion

ESPINOSA, J. The plaintiff, Mark C. Langley, appeals from the judgment of the trial court rendered in connection with the underlying dissolution action in which the

trial court entered several financial orders.[1] The plaintiff claims that the trial court, in fashioning its financial orders, improperly (1) considered the entire length of the parties' relationship, rather than the length of the marriage at issue in the underlying dissolution action; (2) gave undue weight to the command of the English language held by the defendant, Oxana V. Langley, and to the amount of time she would need to obtain a greater command of the language; and (3) based the financial orders on the plaintiff's gross income. We affirm the judgment of the trial court.

The following facts as found by the trial court are relevant to our resolution of this appeal. The parties met in 2003 through an online social network. They developed an online relationship and regularly communicated with each other by means of the Internet. During that period, the plaintiff lived in Connecticut and the defendant lived in Moscow, Russia. The parties met in person when the plaintiff traveled to Russia later in 2003. In 2004, they agreed to marry. The plaintiff arranged for the defendant's relocation to the United States and lived with her in a rural part of Connecticut. The parties married for the first time in 2004.

On October 12, 2006, the plaintiff filed for divorce. When the defendant questioned the plaintiff about the dissolution summons and complaint, the plaintiff told her that she did not have to do anything. On March 1, 2007, the plaintiff went to court without the defendant and obtained a dissolution of marriage by default. Later that evening, the plaintiff informed the defendant that they were no longer married. On March 8, 2007, seven days later, the parties remarried.

The plaintiff filed a complaint for the dissolution of the parties' second marriage on February 9, 2009. In a

---

[1] The plaintiff challenges only the court's judgment with respect to its financial orders. The plaintiff does not challenge the court's judgment dissolving the marriage.

memorandum of decision issued August 13, 2010, the court, *Suarez, J.*, ordered the dissolution of the parties' second marriage. In connection with the underlying dissolution action, the court issued several financial orders, which the plaintiff now challenges on appeal. The plaintiff filed the present appeal on September 1, 2010. Additional facts will be set forth as necessary.

We first set forth the standard of review that governs all three of the plaintiff's claims. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Internal quotation marks omitted.) *Loughlin* v. *Loughlin*, 93 Conn. App. 618, 624, 889 A.2d 902, aff'd, 280 Conn. 632, 910 A.2d 963 (2006). "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 529, 21 A.3d 489 (2011). "[W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Thus, [a] mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 330, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

I

LENGTH OF THE PARTIES' RELATIONSHIP

The plaintiff claims that the court, in fashioning its financial orders, improperly considered the entire

length of the parties' relationship, rather than the length of the marriage at issue in the underlying dissolution action. The plaintiff argues that we must infer that the court improperly considered the parties' first marriage and prior period of cohabitation because the court mentioned these periods in its memorandum of decision. We disagree.

The following additional facts found by the court are relevant to this claim. In its memorandum of decision, the court stated: "The marriage between the parties was volatile since the beginning. . . . The plaintiff married a person he barely knew. . . . After considering all the statutory criteria set forth in [General Statutes §] 46b-62 as to attorney's fees; [General Statutes §] 46b-81 as to assignment of property and transfers of title; [General Statutes §] 46b-82, as to the award of alimony; together with applicable case law, [e]specially, *Loughlin* v. *Loughlin*, 280 Conn. 632 [910 A.2d 963] (2006), as to the length of the marriage criterion prescribed in §§ 46b-81 and 46b-82 with respect to prior marriages between the same parties; and the evidence presented here, the court hereby enters the following orders . . . ." The court then issued the financial orders that the plaintiff now challenges in this appeal.

When issuing financial orders that involve the assignment of property and the award of alimony, a trial court must consider the relevant statutory criteria set forth in §§ 46b-81 (c)[2] and 46b-82 (a),[3] respectively. *Loughlin*

[2] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[3] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to

v. *Loughlin*, supra, 280 Conn. 640. Section 46b-81 (c) provides in relevant part: "[T]he court . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate . . . and needs of each of the parties . . . ."[4] See also General Statutes § 46b-82 (a). "The court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor." (Internal quotation marks omitted.) *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 137, 869 A.2d 164 (2005).

"[T]he 'length of the marriage' criterion prescribed in §§ 46b-81 and 46b-82, as a matter of law, does not include prior marriages or cohabitation preceding the marriage . . . ." *Loughlin* v. *Loughlin*, supra, 280 Conn. 647. "[C]onsideration of a period of cohabitation that precedes a marriage as part of the statutory factor of 'length of the marriage' in a dissolution action is improper." Id., 644. Consideration of a prior marriage as part of the statutory "length of the marriage" factor also is improper. Id., 650–51. Nevertheless, "a dissolution court properly may consider events that occur during a period of cohabitation as indirectly bearing on

pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

[4] In addition, § 46b-62 permits the court to order either spouse to pay the reasonable attorney's fees of the other, provided the court does so in accordance with the parties' respective financial abilities and the same criteria set forth in § 46b-82.

*other* statutory criteria [listed in §§ 46b-81 and 46b-82]." (Emphasis in original.) Id., 644.

We conclude that the court in this case did not consider the parties' prior marriage or period of cohabitation as part of the length of the marriage criterion in §§ 46b-81 and 46b-82. The plaintiff's argument that we must infer that the court considered the parties' entire relationship because the court mentioned the parties' prior marriage and period of cohabitation incorrectly presumes that the mere mention of a fact in the court's decision indicates that the court considered it in the calculation of its financial orders. Our careful review of the court's memorandum of decision leads us to conclude that the court referred to the parties' previous marriage and period of cohabitation for purposes of providing factual and procedural background in its decision and that it did not base its financial orders on these historical facts. See *State* v. *Carter*, 122 Conn. App. 527, 533, 998 A.2d 1217 (2010) ("[a]bsent evidence to the contrary, we presume that the court properly applied that law"), cert. denied, 300 Conn. 915, 13 A.3d 1104 (2011).

Affording the court every reasonable presumption in favor of the correctness of its actions in calculating its financial orders, we decline to infer, absent a clear indication to the contrary, that it improperly considered the parties' prior marriage or period of cohabitation. See id. Additionally, we note that the court explicitly took *Loughlin* v. *Loughlin*, supra, 280 Conn. 632, into consideration. Therefore, we conclude that the court did not abuse its discretion when considering the length of the marriage criterion in the calculation of its financial orders.

II

DEFENDANT'S COMMAND OF THE ENGLISH LANGUAGE

Next, the plaintiff claims that the court erred in determining the duration of the defendant's alimony

award. Specifically, the plaintiff claims that, in evaluating the defendant's employability to determine the appropriate duration of the award, the court gave undue weight to the defendant's limited grasp of the English language and the amount of time that she would need to obtain a greater command of the language.[5] The plaintiff claims that the court gave undue weight to these considerations because the court failed to account for (1) the defendant's past refusal to take English lessons, despite the plaintiff's encouragement, and (2) the defendant's existing ability to communicate with others in English. We are not persuaded.

The following additional facts found by the court are relevant to this claim. The defendant took English lessons in 2010, but had a limited command of the English language at the time of the trial court's decision. The defendant earned $70 per week cleaning houses. She had $228 in her checking accounts. She had a 1997 Mazda Millennium valued at approximately $1000. She did not have any other assets. In connection with the dissolution judgment, the court ordered the plaintiff to pay the defendant $175 per week in periodic alimony for a period of five years from the date of judgment. The court found five years to be a "sufficient time for the defendant to obtain a greater command of the English language and be able to support herself in the community." The court found "based on all the evidence presented by the plaintiff that he has the ability to pay support and that the defendant has the need of support."

---

[5] The plaintiff states that the issue on appeal is "[w]hether a trial court errs when it considers a party's command of the English language when drafting its financial orders." Nevertheless, the plaintiff's argument and corresponding analysis do not address whether it was permissible, under §§ 46b-81 and 46b-82, for a court to consider a party's command of language in drafting its financial orders. Accordingly, we do not reach this issue. See *Rana* v. *Terdjanian*, 136 Conn. App. 99, 120 n.9, 46 A.3d 175 (2012) ("[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court" [internal quotation marks omitted]).

In addition, the defendant testified, through an interpreter, as follows: "I understand in order to live in this country I need to speak English fluently, so if I finish the fifth session of English now, so I have to finish the fifth level of English. And in order to take another subject, I have to finish English 101 and then some other courses and then they will let me take some other subjects. So, to obtain some elementary skills I have to be in college for at least three years."

The plaintiff also presented the following testimony: "When we spoke on the phone, [the defendant's] English was broken, but it was—it was fairly good. When she got here, early on I tried to enroll her— actually, encouraged her to enroll in an ESL class, English as second language class in Colchester, Connecticut, and that lasted for about three weeks. She basically determined that the teacher was not good enough and she refused to go to the ESL classes . . . ." The court did not find the plaintiff to be a credible witness.

The broad discretion given to trial courts in awarding alimony and dividing property "reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Wiegand* v. *Wiegand*, supra, 129 Conn. App. 529–30. "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, [and] shall consider the . . . employability . . . of each of the parties . . . ." General Statutes § 46b-82 (a).

"The trial court is not required to give equal weight to each of the specified criteria it considers in determining its award, nor is any single criterion preferred over

the others. . . . Where . . . it is apparent that the trial court considered all mandatory factors in fashioning its orders, we are not permitted to vary the weight that the trial court placed upon the statutory criteria in reaching its decision." (Citation omitted.) *Graham* v. *Graham*, 25 Conn. App. 41, 45, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991); see also *Chyung* v. *Chyung*, 86 Conn. App. 665, 669, 862 A.2d 374 (2004) ("[t]he court is to consider these factors [in § 46b-82] in making an award of alimony, but it need not give each factor equal weight"), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005).

After specifically stating that it considered all of the statutory criteria in §§ 46b-62, 46b-81 and 46b-82, the court found that "[f]ive years should be sufficient time for the defendant to obtain a greater command of the English language and be able to support herself in the community." It is apparent from the court's finding that it believed that the defendant's command of the English language directly would influence her employability, particularly if she seeks employment that requires her to speak English. Therefore, we interpret the court's finding regarding the defendant's command of English in conjunction with her ability to support herself as a consideration of the defendant's employability, a mandatory statutory criterion that the court was required to consider in issuing its financial orders. See General Statutes § 46b-82 (a).

The plaintiff argues that the court erred by affording too much weight to the defendant's command of English because the court failed to account for the fact that the defendant previously refused to take English lessons, despite encouragement to do so from the plaintiff. The plaintiff also argues that the court ignored the defendant's existing ability to communicate with others in English. Preliminarily, these arguments are predicated

on testimony of the plaintiff, whom the court specifically found to be a noncredible witness. As the trier of fact in this case, the court was free to disregard any of the plaintiff's testimony that it did not find credible.

Further, the court reasonably could have concluded that five years was an appropriate duration for the periodic alimony payments at issue. In its memorandum of decision, the court found that the plaintiff had the ability to pay support and that the defendant had the need of support. The court noted that the defendant had a limited command of English, earned only $70 per week, had $228 in her checking accounts and owned no other assets besides a 1997 Mazda Millennium valued at approximately $1000. The defendant also testified that she needed to complete additional English language courses and attend at least three years of college to learn elementary skills. On the basis of these facts, the court reasonably concluded that five years was a sufficient and appropriate duration for the periodic alimony payments.

The court was free, within its broad discretion to issue alimony awards and divide property, to allocate what it determined to be the proper amount of weight to each of the relevant statutory criteria, including the plaintiff's employability, so long as the court considered all of the mandatory criteria. See *Graham* v. *Graham*, supra, 25 Conn. App. 45 ("[t]he trial court is not required to give equal weight to each of the specified criteria it considers in determining its award, nor is any single criterion preferred over the others"). On the basis of our review of the court's memorandum of decision, it is apparent that the court considered all of the mandatory criteria. Accordingly, we are not permitted to vary the weight that the court placed upon the statutory criteria in reaching its decision. See id. Because the court was free to determine the appropriate weight to attribute to the defendant's command of the English language

and reasonably could have found five years to be a proper duration for the alimony payments, we conclude that the trial court did not abuse its discretion.

## III

### PLAINTIFF'S EARNING CAPACITY

Finally, the plaintiff claims that the court improperly based its financial orders on his gross income. Specifically, the plaintiff argues that the court applied the wrong legal standard by basing its financial orders on the plaintiff's earning capacity in terms of gross income, despite the fact that the court had the means to estimate the plaintiff's net income. We disagree.

The following additional facts found by the court are relevant to this claim. The plaintiff's April 16, 2010 financial affidavit showed that he had a combined gross weekly income of $420 and a net weekly income of $420. The plaintiff did not show any deductions from his pay. The plaintiff's financial affidavit did not show a personal or business bank account. The plaintiff had a 2003 Volkswagen Jetta valued at approximately $5000 and a 1993 Ford Ranger truck valued at approximately $2000. The plaintiff had an individual retirement account valued at $1430. The court found that the plaintiff's financial affidavit was "less than adequate for the court to make financial orders." Therefore, the court looked at the plaintiff's earning capacity in order to enter its financial orders fairly and equitably.

At the time of the court's decision, the plaintiff was forty-nine years old and in good health. The plaintiff has a high school education and some vocational education in the heating, ventilating and air conditioning field. The plaintiff has a special limited sheet metal license from the state. The plaintiff was self-employed and ran two types of businesses. The plaintiff's only assets were his businesses. The plaintiff's "Profit and Loss Standard

from January 1 through November 2009" indicated that the plaintiff's business had a gross income of $72,082 and a net profit of $43,888 for the period. The plaintiff's "Profit and Loss Prev[ious] Year Comparison from January 1, 2010 to April 8, 2010" indicated that the plaintiff's business had a total income of $19,757, a gross profit of $16,818 and a net income of $9032 for the period. "Taking into consideration the downturn in the economy, the court [found] that the plaintiff's business, from which he runs all his expenses, has an earning capacity of $60,000 in gross income." The plaintiff's 2008 federal income tax return showed $82,258 in gross receipts and $60,323 in gross income from the plaintiff's business. The plaintiff's 2007 federal income tax return showed $33,294 of total income and $25,492 in adjusted gross income. The court also noted that the plaintiff was able to pay for the defendant's medical care, the defendant's car and several vacations and trips for the defendant.

"[T]he trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income. . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . [I]t also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations . . . . Moreover, [l]ifestyle and personal expenses may serve as the basis for imputing income where conventional methods for determining income are inadequate." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, supra, 113 Conn. App. 334–35.

"It is well settled that a court must base . . . alimony orders on the available net income of the parties, not

gross income. . . . Whether or not an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific." (Citation omitted.) *Hughes* v. *Hughes*, 95 Conn. App. 200, 204, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006). "[T]he mere notation by the court of a party's gross earnings is not fatal to its support and alimony orders so long as its orders are not based on the parties' gross earnings." Id., 206.

"[T]he fact that the alimony . . . order was ultimately a function of gross income does not, alone, stand for the proposition that the order was based on gross income. . . . [W]e differentiate between an order that is a function of gross income and one that is based on gross income." Id., 207. "By 'function of gross income,' we mean that the court used gross income to calculate its orders, which is distinguishable from the court basing its order on gross income." *Medvey* v. *Medvey*, 98 Conn. App. 278, 284, 908 A.2d 1119 (2006).

In *Hughes* v. *Hughes*, supra, 95 Conn. App. 207, this court "found no case in which an order for support or alimony has been reversed on review simply because it was expressed as a function of a party's gross income. We believe that the term 'based' as used in this context connotes an order that only takes into consideration the parties' gross income and not the parties' net income. Consequently, an order that takes cognizance of the parties' disposable incomes may be proper even if it is expressed as a function of the parties' gross earnings."

In contrast, our Supreme Court and this court have found reversible error when courts have calculated financial orders *solely* on the basis of the parties' gross incomes. See, e.g., *Morris* v. *Morris*, 262 Conn. 299,

307, 811 A.2d 1283 (2003) ("because the trial court expressly and affirmatively stated that it relied on gross income in determining the defendant's support obligation, the trial court abused its discretion because it applied the wrong legal standard"); see also *Cleary* v. *Cleary*, 103 Conn. App. 798, 803–804, 930 A.2d 811 (2007) ("Although the court had before it evidence of the parties' net incomes, it appears that the court chose not to rely on such information. The court's decision is devoid of any mention of the parties' net incomes, and the court expressly stated that its finding as to the defendant's income was based on his gross income. Because the court relied solely on the defendant's gross income in fashioning the financial orders, we conclude that the court improperly designed its financial orders by relying on the defendant's gross income rather than on his net income.").

Because we cannot conclude that the court based it financial orders on the plaintiff's gross income, we likewise cannot conclude that the court in this case abused its discretion in calculating the financial orders at issue. Unlike the trial court in *Morris*, the court in the present case did not state that it *relied* on the plaintiff's gross income to form the basis of it financial orders. Contrary to the plaintiff's assertion, the court did not state that it drafted its financial orders based on the plaintiff's gross earning capacity. Instead, like the trial court in *Hughes*, the court in the present case merely referred to the plaintiff's gross income in demonstrating his ability to pay support.

The court had before it evidence of the plaintiff's gross and net income and referred to both in its memorandum of decision. Specifically, the court referred to the plaintiff's April 16, 2010 financial affidavit, which showed that the plaintiff had a "combined gross weekly income of $420 and a *net* weekly income of $420."

(Emphasis added.) Because the court found the plaintiff's financial affidavit to be "less than adequate for the court to make financial orders," the court looked to the plaintiff's earning capacity to enter the financial orders fairly and equitably. The court assessed the plaintiff's earning capacity based on what he realistically could be expected to earn considering his vocational skills, employability, age and health, as well as documentation of his gross and net income.

The court considered documentation of the plaintiff's business profits and losses for 2009 and the first quarter of 2010.[6] These documents showed the total income, gross profit and *net* income of the plaintiff's business for the relevant time periods. The court also considered the plaintiff's federal income tax returns for 2007 and 2008, which showed the plaintiff's total income and adjusted gross income. In addition, the court acknowledged the plaintiff's ability to pay for the defendant's needs including her medical care, a car and multiple vacations and trips. Although the court found that the plaintiff's business had "an earning capacity of $60,000 in gross income," this finding related to the plaintiff's *business* and appears to have been only one factor in the court's assessment of the plaintiff's overall earning capacity. At most, the court's financial orders were, in part, a function of the plaintiff's gross income, meaning that the court did not base its orders on gross income,

---

[6] We note that the court ordered the plaintiff to pay $175 per week in periodic alimony payments, which is equivalent to $9100 annually. The plaintiff's "Profit and Loss Prev[ious] Year Comparison from January 1, 2010 through April 8, 2010" showed that the plaintiff's business had a net income of $9032 for that period, which accounted for roughly one quarter of the 2010 year. This figure is substantially similar to the annual equivalent of the weekly periodic alimony payments ordered by the court. The court reasonably could have arrived at its $175 alimony figure based on the net income of the plaintiff's business. This further supports the likelihood that the court reasonably relied on the plaintiff's net income, not gross income, in calculating its financial orders.

but merely used gross income in the calculation of its orders.

Moreover, the court specifically stated that it considered all of the statutory criteria set forth in the applicable statutes and the evidence presented by the parties. Affording the court every reasonable presumption in favor of the correctness of its decision, we assume that the court relied on the evidence *relevant* to each statutory criteria, including evidence of the plaintiff's net income. In light of the evidence presented and the court's findings, we conclude that the court did not base its financial orders on the plaintiff's gross income. Therefore, we also conclude that the court did not abuse its discretion in fashioning its financial orders.

The judgment is affirmed.

In this opinion the other judges concurred.