PAULA MORRIS *v.* TIMOTHY MORRIS
(SC 16744)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued October 22, 2002—officially released January 14, 2003

*Lori Welch-Rubin*, with whom, on the brief, was *David Welch-Rubin*, for the appellant (defendant).

*Maureen P. Williams*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The defendant, Timothy Morris, appeals from the judgment of the trial court modifying his child support obligation from $433 per month to $1250 per week. The dispositive issue in this appeal is whether the trial court improperly relied on the parties' gross income, rather than net income, in modifying the defendant's child support obligation. We conclude that the trial court improperly relied on the parties' gross income. Accordingly, we reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. In May, 1997, the trial court dissolved the marriage of the plaintiff, Paula Morris, and the defendant, Timothy Morris. Prior to this proceeding, the plaintiff and the defendant entered into a separation agreement whereby the defendant was required to pay alimony to the plaintiff in the amount

of $3033 per month commencing as of May, 1997, and continuing thereafter through April, 2001, and then in the amount of $2383 per month commencing as of May, 2001, and continuing thereafter through April, 2005. In addition, the defendant was required to pay child support of $433 per month commencing May, 1997, and continuing thereafter through April, 2005, and, commencing May, 2005, an amount to be determined by a court of competent jurisdiction. The defendant was also required to pay 75 percent of the costs associated with the child's extracurricular and recreational activities.

During the dissolution proceedings, the plaintiff, when questioned by her attorney about the terms of the separation agreement, stated that she understood that a strict application of the Connecticut child support guidelines would result in a payment of about $350 *per week*, but that she was seeking the deviation from the child support guidelines on the grounds that, if the alimony and support obligations were considered together, there would be sufficient support for the plaintiff and her child. The trial court then canvassed the plaintiff to verify that she had entered into the agreement freely and voluntarily and that she considered the agreement to resolve the matter fairly and equitably.[1] Thereafter, the court approved the separa-

[1] The following colloquy took place between the plaintiff's attorney, the plaintiff and the court.

"[Plaintiff's Attorney]: Have you also agreed that your husband will pay you the sum of four hundred and thirty-three dollars per month as child support as long as he is obligated to pay support for your child?

"[The Plaintiff]: Yes.

"Q. Mrs. Morris, we have discussed the state of Connecticut child support guidelines. Is that correct?

"A. Yes.

"Q. And I did explain to you that a strict application of the guidelines would result in a probable payment of about three hundred and fifty dollars per week of child support.

"A. Yes.

"Q. And you do understand that we are deviating from the guidelines.

"A. Yes.

"Q. You understand that we are asking the court to deviate from the

tion agreement, dissolved the marriage and incorporated, by reference, the agreement into the decree of dissolution.

In March, 2000, the plaintiff filed a motion to open the judgment and for upward modification of child support. After several days of testimony during the hearing on the plaintiff's motion, the trial court modified the defen-

guidelines on the grounds that given the alimony and support obligations as seen together, as a package, are sufficient for your support and that of your child?

"A. Yes.

"Q. There is also a provision in here that if [the] alimony is terminated for any reason, then a reasonable child support order would enter in accordance with those guidelines.

"A. Yes.

* * *

"The Court: All right. I will ask some questions now, Mrs. Morris, so we will all get a chance.

"Have you had an adequate opportunity to discuss this separation agreement with Attorney [Veronica] Reich?

"[The Plaintiff]: Yes, I have.

"The Court: All right. Are you satisfied with her advice concerning this agreement?

"[The Plaintiff]: Yes, I am.

"The Court: Are you satisfied with the way she has represented you throughout the entire dissolution proceeding?

"[The Plaintiff]: Yes, I am.

"The Court: All right. Did you enter this agreement freely and voluntarily?

"[The Plaintiff]: Yes, I did.

"The Court: Nobody threatened you or harassed you or promised you anything to sign it?

"[The Plaintiff]: No.

"The Court: Okay. Do you understand it completely?

"[The Plaintiff]: I believe so.

"The Court: Well . . . .

"[The Plaintiff]: Yes. I did.

"The Court: Okay. Do you have any questions at all concerning the agreement?

"[The Plaintiff]: I think I discussed them all with my lawyer and I feel I have a good understanding.

"The Court: Do you feel that in view of all of the circumstances that presently exist in this marriage, that this is a fair and equitable resolution of the matter?

"[The Plaintiff]: Yes."

dant's child support obligation from $433 per month to
$1250 per week.[2] In its memorandum of decision, the
court stated: "To properly determine whether or not
there has been a change in circumstances [to warrant
modifying the support order], the court needs to decide
what the respective parties have available for support
consideration now. [The defendant] has the following
*gross* amounts which are properly included in his sup-
port income consideration . . . [the defendant's total]
$5308.08; [the plaintiff's] [gross] income is $759.26.

"Thus, it is readily discernable that there has been a
significant change in the circumstances and modifica-
tion is appropriate.[3]

"The child support guidelines DO NOT apply to this
child and these parties.[4] Thus the court must use its

---

[2] In addition to increasing the defendant's support obligation from $433 per month to $1250 per week, the trial court: (1) removed the obligation that the defendant pay for extracurricular activities; (2) required the defendant to pay 53 percent of the existing $61 per week child care expense; (3) required the defendant to pay 75 percent of all unreimbursed medical, dental and/ or psychological expenses after the plaintiff pays the first $100 per year; (4) required the defendant to pay $200 per week in arrearage; and (5) required the defendant to pay attorney's fees and costs.

[3] The original financial affidavits filed by the parties in 1997 indicated that the plaintiff had a gross weekly income of $677.28 and a net weekly income of $506.41, and that the defendant had a gross weekly income of $2885 and a net weekly income of $1740. The financial affidavits filed by the parties in 2000 indicated that the plaintiff had a gross weekly income of $759.26 and a net weekly income of $556.26, and that the defendant had a gross weekly income, including base salary and incentive compensation, of $5308.08 and a net weekly income of $3246.63.

[4] Section 46b-215a-2a (a) of the Regulations of Connecticut State Agencies provides in relevant part: "(2) . . . When the parents' combined net weekly income exceeds $2,500, child support awards shall be determined on a case-by-case basis, and the current support prescribed at the $2,500 net weekly income level shall be the minimum presumptive amount." The financial affidavits filed by the plaintiff and the defendant indicated that their combined net weekly income in 2000 was $3802.89. Thus, the case is not one that comes within the guidelines, but the presumptive minimum amount to be awarded would be $383, which is the amount prescribed by the guidelines at the $2500 combined net income level.

common sense experience and sense of equity to allocate the available familial support resources fairly. In light of the existing and continuing alimony obligation, having full cognizance of the earnings and earnings potential of the parties, allocating all available resources in an equitable manner to be sure the best interests of the child are met, having stricken the so-called 'extracurricular' obligation and in light of the financial affidavits at this time, I find that the appropriate child support award, payable from [the defendant] to [the plaintiff] is $1250.00 per week." (Emphasis added.)

Thereafter, the defendant moved for reconsideration, claiming that the evidence presented did not warrant such a modification and that the court's decision did not reflect the statutory criteria enumerated in General Statutes § 46b-84[5] for determining child support orders. Specifically, the defendant claimed that " '[c]hild support orders must be based on the statutory criteria enumerated in . . . § 46b-84 of which one of the most important is the needs of the child.' " The defendant contended that "[t]he court's decision, however, is silent on this very important facet." After hearing oral argument on the defendant's motion, the trial court granted the motion to the limited extent of "cleaning up typos . . . ." The trial court's corrected memorandum of decision did not modify the defendant's obligation to pay $1250 per week in child support.

The defendant appealed from the judgment of the trial court to the Appellate Court. Pursuant to General

[5] General Statutes § 46b-84 (d) provides: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

Statutes § 51-199 (c) and Practice Book § 65-1, we transferred the defendant's appeal to this court.

The defendant claims that the trial court: (1) improperly relied on the parties' gross incomes in modifying child support; (2) improperly determined the weekly child support award with no reasonable or rational relation to the child's needs; and (3) failed to consider those components of the parties' original separation agreement that constituted child support as the base against which to modify child support given the increase in the defendant's income. We agree with the defendant's first claim. This renders it unnecessary to consider his other two claims.

As a threshold matter, we must address the standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 282–83, 752 A.2d 1023 (1999). "Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling on a modification may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." *Borkowski* v. *Borkowski*, 228 Conn. 729, 740, 638 A.2d 1060 (1994).

The defendant's first claim is that the trial court improperly relied on the parties' gross incomes in modifying the defendant's child support obligation. Specifically, the defendant claims in his brief that "§ 46b-84 (d) requires the court to consider the 'amount and sources of income' of the parties when rendering an award of child support. . . . It is well established in

this state's jurisprudence that 'amount and sources of income' has been consistently construed by the appellate courts of this state as limited to 'available net income, however, rather than gross income.' " We agree.

It is well settled that a court must base child support and alimony orders on the available net income of the parties, not gross income. *Collette* v. *Collette*, 177 Conn. 465, 469, 418 A.2d 891 (1979); *Tobey* v. *Tobey*, 165 Conn. 742, 747, 345 A.2d 21 (1974); *Evans* v. *Taylor*, 67 Conn. App. 108, 111, 786 A.2d 525 (2001); *Ludgin* v. *McGowan*, 64 Conn. App. 355, 358, 780 A.2d 198 (2001).

In the present case, the trial court stated in its memorandum of decision that "the court needs to decide what the respective parties have available for support consideration now. [The defendant] has the following *gross* amounts which are properly included in his support income consideration . . . . [The plaintiff's] [gross] income is . . . ." (Emphasis added.) Thus, the court affirmatively and expressly stated that it relied on gross income to determine available funds for support consideration.

The plaintiff, however, cites two Appellate Court decisions for the proposition that a trial court does not commit reversible error when the evidence submitted amply demonstrates both net and gross income. See *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 202–203, 572 A.2d 1032 (1990); *Evans* v. *Taylor*, supra, 67 Conn. App. 111–12. Thus, the plaintiff contends that because the trial court's determination was based, in part, on the financial affidavits and tax returns submitted by the parties, which included both gross and net incomes, the trial court did not commit reversible error solely because it mentioned gross income.

The cases upon which the plaintiff relies, however, are inapposite because, in the present case, the trial

court affirmatively and expressly stated that it relied on gross incomes in determining support, as the trial court did in the case at hand. Although the court broadly stated that its support order was based on financial affidavits, the court, nonetheless, expressly and affirmatively stated that the defendant "has the following *gross* amounts which are properly included in his support income consideration . . . ." (Emphasis added.) Therefore, we conclude that the trial court applied the wrong legal standard.

Additionally, because the trial court improperly relied on gross income in determining the defendant's support obligation, all of the other financial orders appurtenant to the modification proceeding must fail.[6] "This court and the Appellate Court have often described financial orders appurtenant to dissolution proceedings as entirely interwoven and as a carefully crafted mosaic, each element of which may be dependent on the other. . . . Consequently, when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Smith*, supra, 249 Conn. 277.

We conclude, therefore, that, because the trial court expressly and affirmatively stated that it relied on gross income in determining the defendant's support obligation, the trial court abused its discretion because it applied the wrong legal standard. Additionally, we conclude that, because the child support order is interwoven with other financial orders that are part of the modification, the trial court, on remand, must reconsider all of the financial orders associated with the modification proceeding.

---

[6] See footnote 2 of this opinion.

The judgment is reversed and the case is remanded to the trial court for a new hearing on the motion for modification.

In this opinion the other justices concurred.