ANN L. CLEARY *v.* JOSEPH P. CLEARY
(AC 27677)

Schaller, McLachlan and West, Js.

Argued April 16—officially released September 18, 2007

*Leo E. Ahern,* for the appellant (defendant).

*John-Henry M. Steele,* for the appellee (plaintiff).

*Opinion*

WEST, J. In this marital dissolution action, the defendant, Joseph P. Cleary, appeals from the judgment of the trial court with respect to the court's financial orders awarding alimony to the plaintiff, Ann L. Cleary. Specifically, the defendant claims that the court abused its discretion by improperly (1) entering alimony orders on the basis of his gross income rather than net income

and (2) ordering that the award of alimony be nonmodifiable on the basis of the defendant's retirement. We agree with the defendant on both claims. Accordingly, we reverse the judgment of the trial court with respect to the financial orders.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The parties were married in July, 1973. The parties have three minor grandchildren of whom they jointly have agreed to assume legal guardianship. The plaintiff commenced this dissolution action in April, 2005, on the ground of irretrievable breakdown. By agreement, the minor children continue to reside with the plaintiff. Evidence was taken on two days, November 9 and December 21, 2005. At the conclusion of the second day of evidence, the court issued rulings and findings of fact. The court distributed the assets of the marital estate and ordered that the defendant pay to the plaintiff $1000 per week in alimony for her lifetime. Thereafter, the defendant filed a motion for reconsideration and a motion to reargue. During a hearing held on April 7, 2006, the court denied both motions. Additional facts will be set forth as necessary.

We begin by setting forth the well settled standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of

fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Citation omitted; internal quotation marks omitted.) *Finan* v. *Finan*, 100 Conn. App. 297, 300, 918 A.2d 910, cert. granted on other grounds, 282 Conn. 926, 926 A.2d 666 (2007).

I

The defendant first claims that the court improperly entered alimony orders on the basis of his gross income rather than net income. We agree.

"It is well settled that a court must base its child support and alimony orders on the available net income of the parties, not gross income. . . . Whether or not an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific." (Citation omitted.) *Hughes* v. *Hughes*, 95 Conn. App. 200, 204, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006).

In *Morris* v. *Morris*, 262 Conn. 299, 811 A.2d 1283 (2003), our Supreme Court reversed the judgment of the trial court because the court relied on the parties' gross incomes in modifying the defendant's child support obligation. Id., 305. In reversing the judgment, the court relied on the trial court's statement that it was "expressly and affirmatively" relying on the parties' gross incomes. Id., 307.

Similarly, in *Ludgin* v. *McGowan*, 64 Conn. App. 355, 780 A.2d 198 (2001), this court reversed the judgment of the trial court because the court fashioned its financial orders on the basis of the parties' gross incomes. Id., 358. In reversing the court's decision, we stated: "[T]he court repeatedly referred to and compared the parties' gross incomes. . . . Although the court had before it evidence of the parties' net incomes, it appears that the court chose not to rely on such information. The court's memorandum of decision is devoid of any mention of the parties' net incomes." Id., 358–59.

In the present case, similar to *Morris* and *Ludgin*, it is clear that the court relied on the defendant's gross income.[1] The court found that the defendant's "annualized income from [his job as a railroad supervisor] is

---

[1] The present case is distinguishable from our recent holdings in *Hughes* v. *Hughes*, supra, 95 Conn. App. 200, and *Medvey* v. *Medvey*, 98 Conn. App. 278, 908 A.2d 1119 (2006). In *Hughes*, supra, 206, we acknowledged that the mere notation by the court of a party's gross earnings is not fatal to its support and alimony orders as long as its orders are not based on the parties' gross earnings. We reasoned that although the trial court referred to the plaintiff's gross income in its decision to demonstrate his ability to pay support, it did not expressly state that it was relying on the plaintiff's gross earnings in framing its order. Id., 207. We differentiated between an order that is a function of gross income and one that is based on gross income, noting that "we have found no case in which an order for support or alimony has been reversed on review simply because it was expressed as a function of a party's gross income. . . . . [T]he term 'based' as used in this context connotes an order that only takes into consideration the parties' gross income and not the parties' net income. Consequently, an order that takes cognizance of the parties' disposable incomes may be proper even if it is expressed as a function of the parties' gross earnings." Id., 207. In *Medvey* v. *Medvey*, supra, 278, we similarly held that because the trial court was aware of both the gross and net incomes of the defendant and fashioned its financial orders on the basis of that evidence, it was not improper to order alimony as a function of gross income. Id., 281–85.

In the present case, although the court had the financial affidavits of the parties before it, the court, by its own response upon a request to clarify demonstrated that it took into consideration the defendant's gross income and not his net income. Therefore, the court's only award of alimony was not a function of gross income, but rather it improperly was based on gross income.

currently about . . . $142,800 a year." That amount is equal to the defendant's gross yearly income from principal employment, as stated in his financial affidavit. After adding other income, the court concluded that the defendant has an income annually of about $177,000,[2] which is equal to the amount of total income listed on the parties' joint 2004 tax return.[3] At the conclusion of the December 21, 2005 proceeding, the defendant's counsel asked: "Your Honor, if I may just ask for clarification. Your Honor made a finding, I believe, of [the defendant's] income to be $177,000? Could you just break that down for me . . . as to . . . where those numbers came from?" The court responded: "His gross weekly income is . . . $2747. Annually, that's about $142,844. . . . His disability income at the rate of $109 a week is about $5668. And his tax return shows that he has gambling income of about . . . $38,000 a year." The court's response, upon a request to clarify, demonstrated that in calculating the defendant's income, it used the defendant's gross weekly income as well as his gambling winnings without mention of his $28,100 in receipted gambling losses as indicated on the parties' 2004 joint income tax return.

Although the court had before it evidence of the parties' net incomes, it appears that the court chose not

---

[2] Specifically, the court found: "[The defendant] has been successfully employed and has steadily moved up in his employment to as high as he can go with the railroad. . . . [H]e has been employed now with the railroad for about forty years and looks to retire in about four years. The testimony is that his annualized income from the railroad is currently about . . . $142,800 a year. Plus, he receives a disability income of about $5600 a year. Testimony also disclosed that at various times, he has sustained gambling losses, and he has also been the beneficiary of significant winnings from his gambling. The evidence is . . . that during the past calendar year, his winnings from gambling were about $38,000, and he has had income from other sources, as not all that significant. The court concludes that . . . he has an income, annually, of about $177,000."

[3] On the 2004 joint income tax return and on the plaintiff's financial affidavit, her occupation is listed as homemaker. The plaintiff testified that she had a few jobs in the 1980s, lasting only a few months.

to rely on such information.[4] The court's decision is devoid of any mention of the parties' net incomes, and the court expressly stated that its finding as to the defendant's income was based on his gross income. Because the court relied solely on the defendant's gross income in fashioning the financial orders, we conclude that the court improperly designed its financial orders by relying on the defendant's gross income rather than on his net income.

## II

The defendant next claims that the court improperly ordered that the award of alimony was nonmodifiable downward unless the plaintiff earns more than $30,000 annually from sources other than alimony. The defendant takes particular issue with the nonmodifiability of the court's award of alimony as it relates to his pending retirement and specifically argues that according to the evidence presented during the dissolution proceeding, the alimony award exceeds his income upon retirement. We agree.

In its December 21, 2005 oral decision, the court ordered that the defendant pay the plaintiff alimony for life at the rate of $1000 per week, which was only modifiable if the plaintiff has income other than alimony in excess of $30,000 annually, if the defendant has a $30,000 increase over his present level of income from a source other than consulting, if the plaintiff remarries or cohabits with another under circumstances that can amount to marriage or if either parties dies.[5] The court

---

[4] Both parties submitted financial affidavits in which they stated their net income. The court failed to note such income and, instead, focused only on the defendant's gross income.

[5] The court specifically ordered that "the [defendant] pay periodic lifetime alimony to the plaintiff wife of $1000 per week. The alimony is not modifiable as to duration. In the event that the plaintiff wife has income other than the alimony in excess of $30,000 annually, it may be modified. And, of course, the alimony may terminate if the [plaintiff] remarries, [cohabits] with another under circumstances that can amount to marriage or in the event of death of either party."

found that the defendant had been employed with the railroad for approximately forty years and that he likely will retire in about four years. The court ordered that the defendant's decrease in income as a result of his retirement could not form a basis for a downward modification of alimony. When questioned by the defendant's counsel, the court reiterated that the defendant's decrease in income, resulting from his retiring, could

Subsequently, the following colloquy occurred:

"[The Plaintiff's Counsel]: If I may, with regard to the alimony order, Your Honor indicated that you were ordering this specific safe harbor so that the [plaintiff] could earn up to $30,000 without that being the basis for a modification, but . . . all of the other bases for her to modify, for example, upward in the event he were to make more money still remains in effect, correct? Just the way that it was stated, I just wanted to clarify that it is nonmodifiable solely . . . based on her income, unless she makes more than $30,000, but all other modification bases still remain.

\* \* \*

"The Court: All right. The court is aware that [the defendant] may engage in consulting, and any moneys that he earns through any consulting that he commences after today's date shall not be the basis for a modification. If there's earned income from some other source or through gambling, then that shall be a basis for a modification of the alimony, if there is a $30,000 increase over his present level of income. So, that gives him a $30,000 safe harbor.

"[The Plaintiff's Counsel]: Fair enough, Your Honor. And if I may, with regard to the limit on his consulting income, in the event that that is the only income he has for—is there a cap? I mean, if he starts consulting and making $300,000 a year, she's limited at—that's my only concern . . . .

"The Court: He still has to pay $1000 a week alimony.

"[The Plaintiff's Counsel]: . . . so, it is a limit for her to go above $1000 because . . . there's always the scenario—I'm just trying to imagine that the alimony . . . somehow gets decreased in six years . . . .

"The Court: It would only be decreased if she's . . . earning more than $30,000 a year.

"[The Defendant's Counsel]: Well, Your Honor, on that point, if I may inquire. If [the defendant's] income decreases, he has the right, still, to come back and ask for a modification downward, correct?

"The Court: It's nonmodifiable . . . . I am mindful of the fact that he will be retiring, or based upon his testimony, he will be retiring in four years. . . . And I expect that when he retires, that there is going to be a decrease in his income. . . . And, so, when I issued my order that he pay alimony for life at the rate of $1000 per week, I took that into consideration.

"[The Defendant's Counsel]: Okay. So, he can decrease it when he retires if his income goes down.

"The Court: No. The answer is 'no.' "

not form the basis for a downward modification of alimony. The defendant's counsel inquired as to how the defendant was to continue paying $1000 per week in alimony after he retires, and the court responded: "I think you know the answer to that question . . . . He has other sources of income."

The plaintiff argues that the issue of the nonmodifiability of the court's award is not subject to review because the defendant did not ask, and the court did not articulate, what "other sources of income" the court relied on in reaching its conclusion that the defendant was precluded from seeking a modification of the alimony award solely on the basis of a decrease in income after retirement. Without an articulation, the plaintiff argues, this court must speculate what "other sources of income" the court relied on in making its award of alimony. No further clarification is necessary. The court, prior to giving its orders orally, stated that the defendant's "income from other sources [was] not all that significant."[6] These other sources of income, which, by the court's own words, are not all that significant, would not give the defendant the ability to pay $52,000 per year in alimony.

Furthermore, the evidence does not reveal any sources of income sufficient to support an award of $1000 per week. The only evidence regarding the defendant's income on retirement, as indicated on his financial affidavit, is approximately $1700 monthly from the railroad retirement plan and a pension plan in the total amount of approximately $173,000. Additionally, the court ordered that the plaintiff is entitled to half of the defendant's retirement benefits, as well as half of his pension benefits upon his retirement. The defendant also receives $109 per week in disability. The parties' joint income tax return for 2004 indicated $38,098 in

[6] See footnote 2.

other income, which the plaintiff testified was attributable to the defendant's gambling winnings, and it also indicated $28,100 in receipted gambling losses. Other assets indicated on the defendant's financial affidavit were relatively insignificant and included $1902 in bank accounts and $4486 in stocks. There also was testimony from the plaintiff that the defendant had discussed with her the possibility of doing consulting work after he retires. There was, however, no evidence as to whether this would take place or how much income he would make as a result.

Accordingly, the court's order is irreconcilable with the principle that alimony is not designed to punish, but to ensure that the former spouse receives adequate support. See *Fattibene* v. *Fattibene*, 183 Conn. 433, 441, 441 A.2d 3 (1981). Requiring that the defendant pay alimony that consumes his income offends the long settled principle that the defendant's ability to pay is a material consideration in formulating financial awards. *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005); see also *Panganiban* v. *Panganiban*, 54 Conn. App. 634, 642–43, 736 A.2d 190 ("[i]t is hornbook law that what a spouse can afford to pay for support and alimony is a material consideration in the court's determination as to what is a proper order" [internal quotation marks omitted]), cert. denied, 251 Conn. 920, 742 A.2d 359 (1999).

"The issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Ludgin* v. *McGowan*, supra, 64 Conn. App. 359; see also *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999) (noting "when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically

authorizes the trial court to reconsider all of the financial orders"). Accordingly, we reverse the judgment with respect to all financial orders.

The judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues in accordance with law.

In this opinion the other judges concurred.