ELIZABETH EINIGER AUERBACH *v.*
ROBERT AUERBACH
(AC 28497)

McLachlan, Lavine and Schaller, Js.

Argued December 9, 2008—officially released March 24, 2009

*Karen L. Dowd*, with whom was *Brendon P. Levesque*, for the appellant (plaintiff).

*Steven D. Ecker*, with whom was *Alinor C. Sterling*, for the appellee (defendant).

### Opinion

McLACHLAN, J. The plaintiff, Elizabeth Einiger Auerbach, appeals from the postjudgment orders of the trial court denying her motion for contempt and granting the motion of the defendant, Robert Auerbach, for modification of his unallocated alimony and child support obligations. The plaintiff claims that the court (1) lacked the authority to grant the modification because the defendant failed to comply with conditions precedent

set forth in the parties' separation agreement as incorporated into the judgment of dissolution, (2) improperly failed to find the defendant in contempt, (3) improperly granted the defendant's motion for modification and (4) improperly entered orders on the basis of the defendant's gross income rather than his net income. We affirm the judgment of the trial court.

The court, *Hon. Edgar W. Bassick III*, judge trial referee, dissolved the parties' fourteen year marriage on December 14, 1999. At the time of the dissolution, the parties had two minor children, aged twelve and nine. The judgment of dissolution incorporated by reference the parties' separation agreement, which contained provisions setting forth the defendant's unallocated alimony and child support obligations and the circumstances that would permit him to seek a modification of the agreement. In essence, the defendant was required to pay unallocated alimony and child support for ten years. For the first five years, he was to pay $250,000 per year in equal monthly installments of $20,833.33, and, for the second five years, he was to pay $225,000 per year in equal monthly installments of $18,750.

On November 18, 2004, the defendant served the plaintiff with a motion to modify the terms of the judgment and agreement, claiming a substantial change in his financial circumstances. The plaintiff filed a motion for contempt on November 24, 2004, alleging that the defendant had failed to pay the entire monthly alimony and child support installments commencing with the payment due in August, 2004. After extensive discovery, the court scheduled a hearing on the motions. On October 30 and 31, 2006, the court, *Hon. Howard T. Owens, Jr.*, judge trial referee, heard testimony from the plaintiff and the defendant and admitted forty-seven exhibits. Following the hearing, the parties submitted briefs summarizing their respective positions. On January 10, 2007,

the court issued its memorandum of decision in which it denied the plaintiff's motion for contempt, finding that the defendant's conduct was not wilful, and reduced the monthly installment for unallocated alimony and child support from $18,750 to $3500, retroactive to November 18, 2004. This appeal followed.

## I

The plaintiff first claims that the court lacked the authority to modify the alimony and child support obligations because the defendant failed to comply with the conditions precedent set forth in the agreement that had been incorporated into the judgment of dissolution. Specifically, the plaintiff argues that the defendant failed to provide the requisite accountant's affidavit and failed to establish that his income was below the $475,000 income threshold necessary to request a modification.[1]

The relevant provisions of the agreement are as follows: "3.1 The [defendant] shall pay to the [plaintiff] as and for alimony and support the following: (a) For the period commencing as of December 15, 1999 through December 14, 2004, the sum of $250,000 per annum payable in equal monthly installments of $20,833.33, which payments shall be due on the 15th day of each month, in advance;

"(b) Commencing December 15, 2004, the sum of $225,000 per annum payable in equal monthly installments of $18,750 each, which payments shall be due on the 15th day of each month, in advance. . . .

"3.3 The alimony and support to be paid by the [defendant] to the [plaintiff] shall be non-modifiable, both as

---

[1] We note that the plaintiff's argument that the income threshold was a condition precedent to the modification of the alimony and child support obligations was not made before the trial court.

to term and amount, by either party under any circumstances, except the [defendant] shall have the right to petition a court of competent jurisdiction for a modification of his alimony and support obligation in the event of the following:

"(a) In regard to paragraph 3.1 (a) of this Article, the [defendant's] obligation shall be reduced to $225,000 upon the [defendant's] demonstrating that his total annual income from all sources, including [subchapter] S income, is less than $1,000,000 in accordance with his tax return submitted to the Internal Revenue Service (for the purposes of reducing the amount in paragraph 3.3 (a) only), the [plaintiff] being limited and bound by the acceptance of the first and second pages of the tax return submitted to the Internal Revenue Service for the year in question provided said two pages are accompanied with an affidavit signed by a certified public accountant affirming that said two pages are the first two pages of the actual tax return filed by the [defendant] for the calendar year in question. Upon receipt of said [affidavit] with two pages annexed, if, in fact, the [defendant's] income has gone below $1,000,000 per annum, effective thereafter, the [defendant's] obligation shall be reduced to the amounts as required under paragraph 3.1 (b);

"(b) In addition to the event in paragraph 3.3 (a), in the event the [defendant's] annual earned income, as defined in paragraph 3.5 of this Article, falls below $475,000 or due to the [plaintiff's] cohabitation as defined under Conn. Gen. Stat. § 46b-86 (b), as amended, the [defendant] shall have the right to seek a modification of his alimony and support obligation as set forth in this Article."

After counsel for the defendant completed his presentation of evidence with respect to the motion for modification, the plaintiff's counsel made an oral motion to

dismiss the defendant's motion because the defendant failed to provide an affidavit of a certified public accountant as required by the parties' separation agreement. The court requested the parties to address that issue in posthearing briefs. The hearing then continued, and the plaintiff presented her evidence in opposition to the defendant's motion and in support of her motion for contempt. In the plaintiff's posthearing brief,[2] she argued that the court lacked subject matter jurisdiction to entertain the defendant's motion for modification because of his failure to satisfy the condition precedent regarding the attachment of an accountant's affidavit to his tax return.

The plaintiff's argument on appeal that the court lacked authority to grant the requested modification fails for several reasons. First, the defendant sought a modification of his obligations pursuant to paragraph 3.3 (b) of the agreement, not paragraph 3.3 (a). The language of the operative provision, paragraph 3.3 (b), contains no requirement that the defendant provide an accountant's affidavit before seeking a modification under that provision.

Second, the court was troubled by the timing of the plaintiff's motion to dismiss. The court noted that "a claim of condition precedent is not favored particularly when the claim is not timely or is waived by a party's conduct or actions." The motion for modification was served on the plaintiff on November 18, 2004. The parties were involved in extensive discovery. The hearing on the motions was held almost two years after the filing of the motion for modification and the motion for

---

[2] In his appellate brief, the defendant states that the plaintiff waived her claim for dismissal because she did not file a posthearing brief as requested by the trial court. A review of the court file, however, reveals that the plaintiff did file a posthearing brief on December 1, 2006. Although the brief was date stamped by the clerk's office, it was not assigned an entry number and therefore does not appear on the docket sheet.

contempt. The first time the plaintiff raised the issue of the defendant's failure to comply with a condition precedent was on October 31, 2006, the second day of the hearing, after the defendant had presented his evidence on his motion for modification. "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Schreck* v. *Stamford*, 72 Conn. App. 497, 500, 805 A.2d 776 (2002).

Finally, the plaintiff claimed in her posthearing brief that the court lacked jurisdiction to entertain the motion; she did not claim that the defendant's failure to comply with the condition precedent restricted the court's authority to act on the motion.[3] The court, in its memorandum of decision, concluded that it did have jurisdiction, citing *Amodio* v. *Amodio*, 247 Conn. 724, 724 A.2d 1084 (1999). It did not address the claim the plaintiff now presents because that claim was never raised at trial. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Citation omitted; internal quotation marks omitted.) *Ingels* v. *Saldana*, 103 Conn. App. 724, 730, 930 A.2d 774 (2007). "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn.

___

[3] "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and [to] determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004).

App. 663, 680, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

Accordingly, the plaintiff cannot prevail on her first claim.

II

The plaintiff next claims that the court improperly denied her motion for contempt. Specifically, the plaintiff argues that the court abused its discretion in failing to find that the defendant's noncompliance with the unallocated alimony and support orders in the judgment of dissolution was wilful.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [defendant] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 590, 823 A.2d 1274 (2003). A finding that a person is or is not in contempt of a court order depends on the facts and circumstances surrounding the conduct. The fact that an order has not been complied with fully does not dictate that a finding of contempt must enter. See *Marcil* v. *Marcil*, 4 Conn. App. 403, 405, 494 A.2d 620 (1985). "[It] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 82, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006).

It is therefore necessary, in reviewing the propriety of the court's decision to deny the motion for contempt, that we review the factual findings of the court that led to its determination. The clearly erroneous standard is

the well settled standard for reviewing a trial court's factual findings. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 353 n.2, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

In the present case, the court found that the defendant's income had been "drastically reduced" from his income in 1999, which formed the basis of his obligations set forth in the parties' separation agreement, to his current income. The court further found that the defendant's "assets [had] diminished substantially," that he was "forced to forfeit his pension" and that he "continue[d] to pay the educational expenses and activity expenses of . . . the parties' . . . daughter." The court concluded: "A critical and careful examination of all the evidence shows a significant and glaring difference from the date of the separation agreement to the present."

The plaintiff argues that those factual findings are clearly erroneous because the defendant's conduct prior to and during the periods of his reduced payments to her was consistent with a higher income than he claimed and demonstrated an ability to comply with the court's orders. In support of that argument, the plaintiff refers to several payments made by the defendant to other creditors during that time period and asserts that he continued his lavish lifestyle and pursued his recreational activities. In addition to the plaintiff's proffered evidence with respect to those claims, however, the court also heard testimony from the defendant with respect to his expenditures and the source of his funds for those expenditures. The defendant testified that he had borrowed large sums of money from his

friends and relatives, converted some of his assets to cash, depleted his savings and borrowed against his residence to meet expenses. Despite the substantially reduced income from his business, he testified that he continued to pay tuition for his daughter's private school and many of his children's daily expenses.

From the defendant's testimony and his individual and business tax returns admitted as exhibits, the court reasonably could have concluded that the defendant's financial situation had so deteriorated that he was unable to comply with the unallocated alimony and support obligations previously ordered by the court. "The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 532, 710 A.2d 757 (1998). Although the plaintiff argued that the defendant's answers at the hearing had been evasive and that inconsistencies in his testimony rendered it not credible, the court chose to believe the explanations he gave as to the decline of his business and that he met his expenses through borrowed funds. We cannot retry the facts or pass on the credibility of witnesses. *Gina M. G.* v. *William C.*, supra, 77 Conn. App. 592.

Because the underlying findings were not clearly erroneous, we conclude that the court properly exercised its discretion in denying the plaintiff's motion for contempt.

### III

The plaintiff next claims that the court improperly granted the defendant's motion for modification of his unallocated alimony and child support obligations. Specifically, the plaintiff argues that the court (1) failed to make a finding that the defendant's annual earned income was below the $475,000 threshold for 2004 and 2005, (2) should have considered the funds available

to the defendant in the Auerbach family trust, (3) should have considered the earning capacity of the defendant in assessing his claim of a substantial change in circumstances and (4) failed to consider the child support criteria as set forth in the child support guidelines before modifying the child support portion of the order.

As previously noted, in seeking a modification pursuant to paragraph 3.3 (b) of the agreement, the defendant was required to establish that his annual earned income fell below $475,000. The plaintiff was served with the defendant's motion for modification on November 18, 2004, and the parties agreed that any court order would be retroactive to that date. Because of the extensive discovery, nearly two years passed before the hearing commenced on that motion and the plaintiff's motion for contempt. At the hearing, there was testimony as to the change in the defendant's financial circumstances from the date of the judgment of dissolution in December, 1999, to the date of the hearing in October, 2006. Further, the defendant submitted his individual and business tax returns for 1999, 2004 and 2005, and a financial affidavit current through the date of the hearing in 2006.

In its memorandum of decision, the court correctly determined that the $475,000 per annum threshold was to be established by the defendant's annual earned income, as that term was defined in the agreement.[4] It then compared the defendant's income in 1999, which formed the basis for the terms of the separation agreement, to his annual earned income at the time of the hearing in 2006. It concluded that the defendant had undergone a substantial change in circumstances

---

[4] Paragraph 3.5 of the agreement provides: "The term 'annual earned income' as used in this Article is defined for the purposes hereof to be the [defendant's] base pay plus cash bonuses, plus all cash distributions from Sub-Chapter S Corporations, which he actually received in that calendar year."

since 1999 and that his projected income for 2006 was well below any of the thresholds set forth in the separation agreement. The court granted the defendant's motion for modification of his unallocated alimony and child support obligations and reduced his monthly payments from $18,750 to $3500, retroactive to November 18, 2004.[5]

"An appellant who seeks to reverse the trial court's exercise of judicial discretion assumes a heavy burden. . . . Decision making in family cases requires flexible, individualized adjudication of the particular facts of each case. . . . Trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. . . . This court may not substitute its own opinion for the factual findings of the trial court. . . . The ultimate question on appellate review is whether the trial court could have concluded as it did. . . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Thus, [a] mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Citations omitted; internal quotation marks omitted.) *Gina M. G.* v. *William C.*, supra, 77 Conn. App. 588–89.

A

The plaintiff first claims that the court improperly granted the defendant's motion for modification without finding that the defendant's annual earned income

---

[5] In her brief on appeal, the plaintiff stated that the court "did not articulate . . . the basis for the order of $3500 per month." Although the plaintiff did file a motion for articulation requesting that the trial court articulate the factual and legal bases for some of its findings, she notably did not seek an articulation with respect to the basis for the reduction in the monthly payment to $3500. The failure to seek an articulation of the trial court's

was below the $475,000 threshold for 2004 and 2005. The plaintiff does not dispute that the court made such a finding with respect to 2006 but argues that the court could not make its order retroactive to November 18, 2004, without making the explicit finding that the defendant's annual earned income for 2004 and 2005 also was less than $475,000.

When the defendant filed his postjudgment motion for modification in October, 2004, he alleged at that time that his income had fallen beneath the threshold set forth in article three of the separation agreement. Although his motion was not heard until October, 2006, the parties agreed that any modification, if ordered by the court, would be retroactive to the date of service of the motion on the plaintiff, which was November 18, 2004. The parties tried the matter on that basis and presented evidence, testimonial and documentary, encompassing the defendant's income and expenses for 2004, 2005 and 2006. The defendant's testimony was that the income from his business was good in 2000 but that it steadily declined after September 11, 2001, and the downturn in the economy. By 2004, the business was experiencing significant difficulties. As a result, his base income for 2004 and 2005 decreased to $52,000 per year. His individual income tax returns for 2004 and 2005 confirm his base salary of $52,000. The return for 2004 and his testimony indicated that $52,995 was distributed from Furniture Rental Associates, a subchapter S corporation. Accordingly, the evidence demonstrated that his annual earned income for 2004 was well below the $475,000 income threshold. The defendant's return for 2005 indicated that $57,713 was distributed from the subchapter S corporation. The total of his base income and distributions from subchapter S

decision to clarify that issue and to preserve it properly for appeal leaves this court without the ability to engage in a meaningful review. See *Heaven* v. *Timber Hill, LLC*, 96 Conn. App. 294, 313, 900 A.2d 560 (2006).

corporations was, again, well below the annual earned income threshold of $475,000. The defendant's financial affidavit submitted in October, 2006, at the time of the hearing, basically reflected the same financial situation. The defendant indicated that he expected to receive $52,000 for his base salary in 2006 and that he anticipated approximately $100,000 in distributions from partnerships, the trust and subchapter S corporations.[6] That affidavit also corroborated the defendant's testimony that he forfeited retirement assets of more than $600,000 because the pension fund was underfunded and the business could no longer afford to fund it.

In their posthearing briefs, both parties referenced the defendant's income in 1999, 2004, 2005 and 2006, and the tax returns and affidavits evidencing that income, as well as the defendant's pattern of spending and the management of his business over that period of time. At no point did the plaintiff argue that the defendant's financial situation in 2004 and 2005 was different from his situation in 2006 or that he failed to offer any evidence to show that his annual earned income for 2004 or 2005 was less than $475,000. The court did not reference all the testimony and exhibits in its memorandum of decision. Instead, it concluded that the defendant met his burden of demonstrating a significant decline in his income since 1999 and modified the judgment retroactive to November, 2004. The fact that the court's order was retroactive to 2004 indicates that the court considered and ruled on the arguments addressed to the years 2004, 2005 and 2006 as presented during the hearing and as presented in the parties' posthearing briefs.

We conclude that by reciting the applicable provision of the parties' separation agreement, including the

---

[6] In determining whether his income was below the $475,000 threshold required for the modification, the calculation of his annual earned income included only his salary and the income from the subchapter S corporations.

$475,000 income threshold and the necessity of calculating the defendant's annual earned income for purposes of determining that threshold, the court implicitly found that the defendant's annual earned income was less than $475,000 when it ordered the reduction of the defendant's obligations retroactive to November, 2004. See *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 383, 386, 731 A.2d 330 (1999).

B

The plaintiff next claims that the court improperly granted the defendant's motion for modification because it failed to consider the funds available to him in the Auerbach family trust. Specifically, the plaintiff argues that the defendant not only had access to the trust funds, but also that "he was absolutely entitled to take at least $500,000 from that trust." The plaintiff then proceeds to reference various provisions of the trust in support of those arguments.

Although the trust document was submitted as an exhibit at the hearing and the defendant testified as to the purpose for its establishment in 1995, four years prior to the dissolution of the parties' marriage, the plaintiff did not claim in her posthearing brief that the defendant's motion for modification should be denied because he had full access to $500,000 of trust funds. In opening statements to the court, counsel for the plaintiff alleged that the defendant had set up several business structures to divert income and funnel it through the trust to distribute as he pleased. Although various questions were directed to the defendant about the trust, the plaintiff did no more than insinuate that he could have made payments from the trust to himself. The defendant consistently testified that he had received no distributions from the trust and that its assets were being preserved for the benefit of the children.

The plaintiff never directed the court to specific language in the trust or any testimony at the hearing in connection with an argument that the defendant had full access to $500,000 in trust assets with which he could have made his payments of unallocated alimony and child support. The posthearing brief is devoid of any such argument, and the court is not expected to intuit such a claim from various questions addressed to the defendant about the trust during the hearing. "The responsibility of a court is to respond to those claims fairly advanced." *Stuart* v. *Stuart*, 112 Conn. App. 160, 184, 962 A.2d 842, cert. granted on other grounds, 290 Conn. 920, 966 A.2d 237 (2009). The plaintiff did not adequately place that claim before the trial court, and we therefore decline to afford it review.

C

The plaintiff next claims that the court failed to consider the earning capacity of the defendant in assessing his claim of a substantial change in circumstances. The plaintiff argues that the court should have imputed income to the defendant in the same amount of the expenses that he continued to incur immediately before and after he failed to pay her the full monthly installment of his unallocated alimony and support obligations.

"It is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income. . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . [I]t also is especially appropriate for the court to consider whether the defendant has wilfully

restricted his earning capacity to avoid support obligations . . . . Moreover, [l]ifestyle and personal expenses may serve as the basis for imputing income where conventional methods for determining income are inadequate." (Citations omitted; internal quotation marks omitted.) *Milazzo-Panico* v. *Panico*, 103 Conn. App. 464, 468, 929 A.2d 351 (2007).

In the present case, the plaintiff lists several of the defendant's expenses between 1999 and October, 2006, and claims that he stayed current with all of his obligations except his unallocated alimony and support obligations. She argues that the discrepancy between his expenses and income demonstrate an earning capacity well in excess of his reported income. As previously indicated, however, the court denied the plaintiff's motion for contempt on the ground that the defendant's failure to make the monthly installments pursuant to the order in the dissolution of judgment was not wilful. The record supports that conclusion because the defendant testified that he borrowed large sums of money from his family and friends, depleted his savings and borrowed against his residence to meet those expenses.[7] It is the sole province of the court to weigh and to interpret the evidence before it, and we cannot conclude that the court's failure to impute income to the defendant under those circumstances was improper.

D

The plaintiff also claims that the court improperly granted the defendant's motion for modification because it failed to consider the child support criteria when it modified the defendant's unallocated alimony and child support obligations. The plaintiff argues that

---

[7] "[T]he court may consider the fact that the defendant has met his monthly expenses by borrowing against his residence in evaluating his ability to meet his alimony obligation." *Simms* v. *Simms*, 283 Conn. 494, 507 n.13, 927 A.2d 894 (2007).

the court abused its discretion by addressing the alimony aspect of the order without addressing the child support aspect of the order.

Testimony at the hearing revealed that the parties' son would be twenty years old within a few months and was attending college. The parties' daughter would be seventeen years old within a few months and was attending a private school. Evidence was presented regarding the minor child's needs and expenses. Counsel for the plaintiff referenced the criteria to be considered in modification of child support orders on the second day of the hearing, and counsel for the defendant agreed that the court was required to consider the needs of the minor child in determining whether the unallocated alimony and child support obligations should be modified.

In its memorandum of decision, the court stated that the defendant's requested modification pertained to the unallocated alimony and child support payments that he was required to pay for ten years pursuant to the judgment of dissolution. After finding that the defendant had undergone a substantial change in circumstances because his income had been drastically reduced since the time the judgment had been rendered and that the plaintiff's assets had quadrupled during that period of time, the court noted that the defendant continued to pay the educational and activity expenses of the parties' minor child.

The plaintiff correctly states that the court did not enumerate the statutory criteria it considered in reaching its determination. That omission, however, is not fatal. "Trial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes. . . . The court must consider all of these criteria. . . . It

need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor. . . . Nor need it give each factor equal weight." (Citation omitted; internal quotation marks omitted.) *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 330, 913 A.2d 1096 (2007).

Moreover, although the plaintiff argues that the court failed to consider the criteria set forth in the child support guidelines, neither party filed child support guidelines worksheets.[8] "[A] party who has failed to submit a child support guidelines worksheet as required by Practice Book § 25-30 (e)[9] cannot complain of the court's alleged failure to comply with the guidelines." *Bee* v. *Bee*, 79 Conn. App. 783, 788, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003).

In light of the foregoing and allowing every reasonable presumption in favor of the correctness of the court's action; see *Sabrowski* v. *Sabrowski*, 105 Conn. App. 49, 56, 935 A.2d 1037 (2007); we cannot conclude that the court abused its discretion in granting the defendant's motion to modify his unallocated alimony and child support obligations.

## IV

The plaintiff's final claim is that the court improperly entered orders on the basis of the defendant's gross

[8] General Statutes § 46b-86 (a) provides in relevant part that an order of alimony or support may "at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

[9] Practice Book § 25-30 (e) provides in relevant part: "Where there is a minor child who requires support, the parties shall file a completed child support and arrearage guidelines worksheet at the time of any court hearing concerning child support; or at the time of a final hearing in an action for dissolution of marriage . . . ."

income rather than his net income. The plaintiff argues that the court referred only to the defendant's gross income in its memorandum of decision and did not discuss how it considered his net income in finding a substantial change in circumstances.

"It is well settled that a court must base its child support and alimony orders on the available net income of the parties, not gross income. . . . Whether or not an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 801, 930 A.2d 811 (2007). "[T]he fact that the alimony and support order was ultimately a function of gross income does not, alone, stand for the proposition that the order was based on gross income. . . . [W]e differentiate between an order that is a function of gross income and one that is based on gross income." (Internal quotation marks omitted.) *Medvey* v. *Medvey*, 98 Conn. App. 278, 284, 908 A.2d 1119 (2006).

In the present case, the court made the finding that the defendant's income had been "drastically reduced from his income of $1,330,696 in 1999, which formed the basis of the separation agreement, to the present when his gross income is shown to be $52,000 per year . . . ." The court then proceeded to discuss the $475,000 income threshold as determined by the defendant's annual earned income. The court concluded that his annual earned income, as defined in the agreement, was well below that threshold and reduced his monthly payment from $18,750 to $3500.

As acknowledged by the plaintiff, the court had evidence of the parties' net incomes. In its memorandum

of decision, the court did not refer to net incomes and only once referred to the defendant's then present gross income of $52,000. Taken in context, however, the reference to his "gross income" was necessary and appropriate in determining the defendant's annual earned income as defined in paragraph 3.5 of the agreement. To find that his "annual earned income" was less than the $475,000 income threshold, in order to determine that he was entitled to seek a modification, the court had to consider, under paragraph 3.5, the defendant's "base pay plus cash bonuses, plus all cash distributions from Sub-Chapter S Corporations, which he actually received in that calendar year." The court, therefore, had to consider the defendant's gross salary of $52,000 in making that calculation.[10] Accordingly, in light of the evidence presented and the findings of the court, we cannot conclude that the court based its alimony and child support orders on the defendant's gross income.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Although the court referred to the defendant's present "gross income" of $52,000 per year, it is clear that the court was referring to the defendant's gross salary or base pay. The defendant's income tax returns for 2004 and 2005, his October, 2006 financial affidavit and his testimony at the hearing all confirmed that he received a salary of $52,000 per year from his business.

[11] "On the basis of our review of the evidence submitted to the court by the parties, we infer that the court was aware of both the gross and net incomes of the defendant and fashioned its financial order on the basis of that evidence." *Medvey* v. *Medvey*, supra, 98 Conn. App. 283.